No. 84,753

In the Matter of JOHN F. MCGEE, *Respondent.*

(13 P.3d 11)

Opinion filed October 27, 2000.

*Frank D. Diehl,* deputy disciplinary administrator, argued the cause and was on the formal complaint for the petitioner.

No appearance by respondent.

*Per Curiam*: This is an original proceeding in discipline filed by the Disciplinary Administrator's office against John F. McGee, of Wichita, an attorney admitted to the practice of law in Kansas.

The formal complaint filed against respondent alleges violations of KRPC 1.3 (1999 Kan. Ct. R. Annot. 294), KRPC 1.4(a) (1999 Kan. Ct. R. Annot. 303), KRPC 1.16(a)(2) (1999 Kan. Ct. R. Annot. 352), and 8.4(c) (1999 Kan. Ct. R. Annot. 399).

The complaint filed against respondent grew out of his representation of Randy King in 1998. The investigation of King's complaint ultimately resulted in the filing of the formal complaint. The formal complaint was heard by a hearing panel of the Kansas Board for Discipline of Attorneys on January 20, 2000. The respondent appeared in person at the panel hearing.

The panel found:

"2. On November 18, 1998, Randy King (Complainant) contacted the Respondent. At that time Mr. King was seeking an attorney to file suit against a contractor who painted Mr. King's house. The contractor was paid $3,500.00 to paint Mr. King's house. Mr. King sought to recover the $3,500.00 paid to the contractor because the workmanship was substandard. The Respondent agreed to represent Mr. King and to file suit against the contractor. The Respondent and Mr. King agreed that Mr. King would pay the Respondent on an hourly basis. Unfortunately, the agreement was not reduced to writing.

"3. Based upon his initial conversation with the Respondent, Mr. King was under the impression that the Respondent would immediately file suit against the contractor. After two weeks had passed, and Mr. King had heard nothing from the Respondent, Mr. King contacted the Respondent. The Respondent informed Mr. King that the Respondent had been unable to obtain service of process on

the contractor. Mr. King concurred that the Respondent hire a process server to locate the contractor.

"4. During December of 1998, to learn the status of his case, Mr. King tried to contact the Respondent on numerous occasions. Mr. King was unable to get in touch with the Respondent until January of 1999. At that time, the Respondent told Mr. King that service of process had been achieved on the contractor, but that they would have to wait for twenty (20) days for the contractor's answer.

"5. A month passed and Mr. King heard nothing from the Respondent. As a result, Mr. King tried to contact the Respondent. During this time, Mr. King left many telephone messages for the Respondent. The Respondent never returned Mr. King's telephone calls.

"6. Mr. King finally reached the Respondent in March of 1999. The Respondent told Mr. King that the defendant received a twenty (20) day extension to answer the petition.

"7. In April of 1999, the Respondent told Mr. King that because the defendant failed to request a trial setting, Mr. King received a default judgment. The Respondent told Mr. King that he would have to wait an additional twenty (20) days to enforce the judgment.

"8. At that time, Mr. King requested copies of all of the pleadings filed in his behalf. The Respondent assured Mr. King that the requested copies would be placed in the mail. After waiting two (2) weeks for the requested paperwork, Mr. King telephoned the Respondent's office and asked that the pleadings be faxed to Mr. King's attention. Again, the Respondent agreed to provide Mr. King with copies of the pleadings.

"9. After waiting an additional week for the requested copies, Mr. King telephoned the Clerk of the District Court. At that time, he learned that the Respondent had never filed suit against the contractor. Mr. King confronted the Respondent with this information. The Respondent confirmed that he did not file the case. The Respondent apologized to Mr. King, but explained that he had been depressed. The Respondent told Mr. King that he had intended to file the suit.

"10. The following day, the Respondent contacted Mr. King and offered to settle the dispute. The Respondent agreed to pay $300.00 and file the law suit on the following Monday. Additionally, the Respondent offered to pay Mr. King an additional $1,000.00 if he failed to file the suit as indicated. Mr. King told the Respondent that he wanted to recover his $3,500.00. Because the Respondent and Mr. King did not reach an agreement, the Respondent did not forward any money to Mr. King.

"11. Suzanne R. Dwyer, an attorney practicing law in Wichita, Sedgwick County, Kansas, was assigned to investigate Mr. King's complaint. Mr. King told Ms. Dwyer that because more than a year had elapsed since the work was completed on his house it would be difficult to prove that the workmanship was faulty. Additionally, Mr. King had learned that the contractor faced other law suits and was now without assets.

"12. During the course of the investigation, the Respondent told Ms. Dwyer that while he suffers from depression, he did not want to disclose that in his response because he did not want to use his condition as a 'crutch.'

"13. On June 9, 1999, the Respondent sent a letter to Edwin A. Van Petten, Deputy Disciplinary Administrator, stating that Mr. King's recitation of facts in his complaint . . . was 'unfortunately correct.' "

The panel concluded by clear and convincing evidence that respondent had violated the Kansas Rules of Professional Conduct as alleged in the formal complaint.

The panel found the following aggravating circumstances:

"Prior Disciplinary Offenses. On February 14, 1991, the Respondent was informally admonished for having violated Kansas Rules of Professional Conduct (hereinafter 'KRPC') 1.3 and KRPC 1.4.

"A Pattern of Misconduct. The Respondent lied to Mr. King on five (5) or six (6) separate occasions. Because the Respondent repeatedly provided false information to Mr. King, the Respondent engaged in a pattern of misconduct.

"Multiple Offenses. By violating KRPC 1.3, 1.4(a), 1.16(a)(2), and 8.4(c), the Respondent committed multiple offenses.

"Substantial Experience in the Practice of Law. The Respondent was admitted to the practice of law in the state of Kansas on September 9, 1977. At the time of this misconduct, the Respondent had practiced law for twenty-one (21) years."

The panel found in mitigation the respondent's attitude in cooperating and acknowledging his misconduct.

The panel unanimously recommended to the court that the respondent be suspended from the practice of law in the state of Kansas for a period of 1 year. The panel further concluded:

"Mr. King appeared at the hearing on this matter and requested that the Respondent pay $3,500.00 in restitution. Evidence of a clear and convincing nature was not presented to establish that Mr. King would have prevailed had the suit been filed, and that Mr. King would have been able to collect a judgment against the contractor. Accordingly, the Hearing Panel makes no recommendation regarding restitution."

The respondent filed a response to the final hearing report. In the response, he does not take exception to the report but does take exception to the discipline recommended by the panel.

After having considered the record herein and the reports of the hearing panel, a majority of the court concurs in the findings, con-

clusions, and recommendation of the panel. A minority of the court would impose a more severe discipline.

IT IS THEREFORE ORDERED that John F. McGee be suspended from the practice of law in the State of Kansas for a period of 1 year effective October 27, 2000, in accordance with Supreme Court Rule 203(a)(2) (1999 Kan. Ct. R. Annot. 210).

IT IS FURTHER ORDERED that in the event the respondent should seek reinstatement, he be subject to all of the reinstatement requirements, including a hearing as provided by Supreme Court Rule 219 (1999 Kan. Ct. R. Annot. 260).

IT IS FURTHER ORDERED that respondent fully comply with Supreme Court Rule 218 (1999 Kan. Ct. R. Annot. 250), that the costs of these proceedings be assessed to the respondent, and that this order be published in the official Kansas Reports.